**GOLDSMITH & MENDOZA P.L.L.C.**
1670 E. River Road, Suite 200
Tucson, Arizona 85718
Phone/Fax: (520) 497-1138
Eugene N. Goldsmith; eng@goldsmith-mendoza.com
ASB No. 010254
Maria del Pilar Mendoza; pm@goldsmith-mendoza.com
ASB No. 024740
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

## TUCSON DIVISION

| | |
|---|---|
| KIMBERLY FINDLEY, a single woman individually<br><br>            Plaintiff,<br><br>v.<br><br>CANOA RANCH CLUBHOUSE L.L.C, an Arizona Limited Liability Company; CANOA RANCH GOLF COURSE L.L.C., an Arizona Limited Liability Company, and MICHAEL COCHRAN, and JANE DOE COCHRAN, husband and wife.<br>            Defendants | NO.<br><br>**COMPLAINT FOR WRONGFUL TERMINATION DISCRIMINATION, HOSTILE WORK ENVIRONMENT; INVASION OF PRIVACY.**<br><br>**(Jury Trial Requested)**<br><br>**42 U.S.C. §§ 12101** *et seq*. |

Plaintiff KIMBERLY FINDLEY ("Ms. Findley") for her Complaint against Defendants CANOA RANCH CLUBHOUSE L.L.C, an Arizona Limited Liability Company; CANOA RANCH GOLF COURSE L.L.C, an Arizona Limited Liability Company, (collectively "Canoa") Michael Cochran ("Mr. Cochran") and Jane Doe Cochran, husband and wife, (collectively "Defendants") alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Ms. Findley is a resident of Pima County, Arizona.

2. Canoa Ranch Clubhouse L.L.C is an Arizona Limited Liability Company doing business in Pima County, Arizona.

3. Canoa Ranch Golf Course L.L.C is an Arizona Limited Liability Company doing business in Pima County, Arizona

4. On February 15, 2021 Canoa Ranch Clubhouse L.L.C. and Canoa Ranch Golf Course L.L.C. merged.  The name of the surviving corporation is Canoa Ranch Golf Course L.L.C.

5. Upon information and belief, Canoa employs more than 50 employees.

6. Mr. Cochran is a resident of Pima County, Arizona.

7. Upon information and belief, Jane Doe Cochran is a resident of Pima County Arizona.

8. All acts complained of herein were done by the Defendants or by their authorized agents in the course and scope of their employment or agency. As to the married defendant, that defendant was acting for and on behalf of his marital community.

9. Defendants directly and or through their authorized agents or employees caused events to occur in Pima County, Arizona, which are the basis of this action.

10. This court has jurisdiction regarding this matter pursuant to 28 U.S.C.A. § 133, and 1367 (a). Ms. Findley's cause of action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C, §§ 2000e *et. seq.*

11. Venue in this Court is proper pursuant to 28 U.S.C.A. § 1391(a) as this is the judicial district where the events or omissions giving rise to the claim occurred.

**ADMINISTRATIVE PROCEDURES**

12. On or about August 17, 2020, and within 180 days of March 13, 2020 (Ms. Findley's termination) Ms. Findley filed a charge of employment discrimination with the Arizona Civil Rights Division ("ACRD") and the Equal Employment Opportunity Commission ("EEOC"). Pursuant to the sharing arrangement between the AZRD and the EEOC, Ms. Findley filed a charge with AZCRD, since that agency has geographical jurisdiction over Canoa.

13. Ms. Findley's Charge against Canoa is identified by CRD No.: CRD-2020-0719; and EEOC No: 35A-20202-00589C.

14. This action is timely commenced within 90 days of Ms. Findley's receipt of her notice of right to sue letter dated January 28, 2021, and before the one-year anniversary of her termination, and her filing of her charge of discrimination.

**GENERAL ALLEGATIONS**

15. Ms. Findley realleges and incorporates by reference the allegations contained in the previous paragraphs.

<u>Ms. Findley's Employment at Canoa</u>

16. Ms. Findley began working at Canoa as a hostess, at the Canoa Ranch Grill on the Green, approximately in February 2014.

17. Approximately six (6) months later, Canoa promoted Ms. Findley to manager of the Torres Blancas Abrego Grill ("Abrego").

18. In the summer of 2016, Mr. Cochran was hired as Canoa's General Manager and became Ms. Findley's supervisor.

### Mr. Cochran Harassment of Other Employees

19. At the beginning of 2017, Canoa hired Marcia Derlein ("Marcia"), as assistant controller. Not long after Marcia began working at Canoa, Marcia reported to Ms. Findley that Mr. Cochran was making unwelcomed sexual advances towards her.

20. Marcia complained on several occasions that Mr. Cochran would flirt with her, invite her to go out after work and that she was very uncomfortable. At one point, Marcia called Ms. Findley crying, telling her Mr. Cochran's behavior was making it difficult to go into work.

21. In October 2017, Marcia informed Ms. Findley she was going to file a sexual harassment claim with Canoa's human resources management company, due to Mr. Cochran's behavior.

22. At that time, Canoa, had hired a company to handle its human resources. That Human Resources company interviewed Marcia, and shortly thereafter, Canoa terminated Marcia.

### Mr. Cochran's Harassment of Ms. Findley

23. After Marcia's termination, Mr. Cochran's attention turned to Ms. Findley.

24. In October 2017, Ms. Findley moved into a new home, but she did not update her address information with Canoa.  Ms. Findley began to notice that Mr. Cochran would follow her vehicle at the end of her shift. She knew Mr. Cochran's car and began seeing that car drive by her home several times during the week.

25. Ms. Findley became very uneasy and afraid. Ms. Findley kept her blinds closed, and her television and lights off.  She was afraid of Mr. Cochran's unwelcomed visits.

26. In December 2017, Marcia went to Abrego to visit Ms. Findley.  Marcia asked Ms. Findley if she could move into Ms. Findley's home as her roommate. Mr. Cochran learned about that

fact and threatened Ms. Findley. Mr. Cochran warned Ms. Findley it would be a very bad idea if Marcia moved in with her.

27. After that conversation, Mr. Cochran began to sexually harass Ms. Findley at work. He slowly began to make inappropriate comments about Ms. Findley's appearance, while continuing to follow her home after her shifts.

28. In approximately January 2018, Mr. Cochran called Ms. Findley into a human resources meeting. He invited Ms. Wendy Brown who, at the time, was Canoa's Controller and Human Resources director.

29. Mr. Cochran showed Ms. Findley her mug shot on his phone. He told Ms. Findley he wanted to know the details of her criminal past. Ms. Findley was embarrassed, afraid for her job, and nervous. Mr. Cochran also showed her a printout of her rap sheet. That rap sheet included Ms. Findley's mug shot and described incidents that occurred between 15 and 26 years earlier.

30. Ms. Findley explained that, long before her employment with Canoa, she lost her mother, got divorced, became addicted to drugs, and served time in prison. The discussion was deeply personal and humiliating to Ms. Findley. Ms. Findley explained how she had, years prior, turned her life around and had now worked at Canoa without issues, for four (4) years.

31. After that meeting, Mr. Cochran often reminded Ms. Findley about her criminal past and threatened that she could not leave Canoa because of her criminal background.

32. On several occasions, Mr. Cochran told Ms. Findley it would be unlikely that she could replace her job at Canoa if others learned of her criminal past.

33. Ms. Findley slowly became weary of Mr. Cochran's veiled threats about disclosing her criminal background to others.

34. Mr. Cochran's extremely inappropriate behavior increased in severity. The instances are numerous. For example: (i) Mr. Cochran invited Ms. Findley out on dates; (ii) tried to kiss her; (iii) told her he loved her; (iv) touched her inappropriately; (v) scheduled unnecessary meetings to be with Ms. Findley alone; (vi) called her on her cell phone on her days off; (vii) placed gifts in Ms. Findley's purse while at work; (viii) kept arriving at her home uninvited and left gifts at her front door.

35. That behavior was threatening to Ms. Findley and she became increasingly anxious as a result.  Often after visiting Ms. Findley's front door uninvited, Mr. Cochran would text or contact Ms. Findley to make sure she knew that he: (i) had been at her house: and (ii) knew she was alone at home.

36. Canoa protected Mr. Cochran's behavior towards Ms. Findley.  For example, Maria Lopez and employee of Canoa, witnessed Mr. Cochran placing a gift into Ms. Findley's purse.  Maria Lopez reported that behavior to Canoa's Human Resources Department.  In response, Canoa terminated Ms. Lopez for allegedly gossiping and spreading rumors.

37. Similarly, Gerald Anaya another employee of Canoa witnessed when Mr. Cochran locked himself in a room with Ms. Findley.  Mr. Anaya was concerned for Ms. Findley's safety and questioned Ms. Findley about the event.  Canoa later fired him for allegedly gossiping and spreading rumors.

38. Ms. Findley was afraid of walking out alone into Canoa's parking lot after her shift. Ms. Findley would ask other employees to walk with her in order to avoid running into Mr. Cochran alone.

39. By December 2019, Mr. Cochran became more insistent and impatient with Ms. Findley and her continued refusal of his advances. He wanted Ms. Findley to go with him to Phoenix. She refused that invitation several times.

Mr. Cochran Gets More Aggressive in His Harassment and
Makes Sure Ms. Findley Knows He Now Has A Weapon

40. In late February 2020, when leaving work, Mr. Cochran called Ms. Findley and had her meet him at the CVS parking lot close to Canoa. Ms. Findley was convinced it was a work-related call since she had closed that night. When she met Mr. Cochran, he asked her to get into his vehicle, and he showed her a gun. He told her that gun was the reason he had been inviting her to go to Phoenix. He said he was now an Arizona Ranger and was permitted to carry a weapon.

41. Ms. Findley was intimidated by that exchange. She had trouble sleeping and eating, and was anxious and fearful.

42. On February 28, 2020, Mr. Cochran called Ms. Findley into a work meeting at his office. While there, he grabbed Ms. Findley's face and tried to kiss her. Ms. Findley rejected him but was very afraid of the repercussions of that rejection. She started crying at work, believing she was no longer safe, that Mr. Cochran would continue to harass her despite her refusals, and he now had shown her he was armed.

## Ms. Findley's Constructive Discharge

43. Part of Ms. Findley's regular job duties as a restaurant manager included setting up the staff schedule. On March 13, 2020, she set up the schedule as usual and made some changes. After she made those changes, Mr. Cochran called Ms. Findley and was very aggressive. Mr. Cochran told Ms. Findley that she was not the manager that day, but instead a bartender, and to cancel any changes she had made to the schedule.

44. It was obvious to Ms. Findley that Mr. Cochran's changing Ms. Findley to a bartender, was retaliation for her continued refusal of Mr. Cochran's advances.

45. Ms. Findley also felt threatened by Mr. Cochran's heightened aggressiveness, and her knowledge that he now carried a weapon.

46. Ms. Findley realized maintaining her job was no longer possible. Her job situation was unsafe and dangerous. That situation with Mr. Cochran, therefore, caused Ms. Findley's constructive discharge as she was forced to involuntarily resign.

47. Immediately after Mr. Cochran's call, on March 13, 2020, Ms. Findley met with Wendy Brown, the human resources manager. She told her she was leaving her job but wanted to explain the conditions that caused her to leave. Ms. Brown was dismissive of Ms. Findley's report.

48. Unbeknownst to Ms. Findley, Ms. Brown was having a romantic relationship with Mr. Cochran at the time.

Mr. Cochran's Behavior and Harassment Continued After Ms. Findley left Canoa

49. On April 1, 2020, Ms. Findley found new employment as a restaurant manager at the San Ignacio Golf Club ("Club").  Her salary new was $41,500 - much less than the $53,000 that she earned at Canoa.

50. On June 15, 2020, Ronnie Black, San Ignacio's general manager, called Ms. Findley into his office.  Mr. Black also called the Club's Chef into that meeting.

51. Mr. Black informed Ms. Findley he had received a manila envelope with incriminating documents about her criminal background. The documents were identical to the ones Mr. Cochran had showed Ms. Findley at their January 2018 meeting.  Mr. Black told Ms. Findley that he knew Mr. Cochran had sent that envelope, because it fit his *Modus Operandi*.  Mr. Cochran had done something similar five (5) years before, when he sent a letter to Mr. Black's boss.  Ms. Findley was not dismissed but was sad, anxious, embarrassed, and worried about her safety.

52. After that meeting, when Ms. Findley walked into the restaurant, she met Mr. Jon Fitch.  Mr. Fitch was a former customer at Canoa and saw Ms. Findley often when she was employed there.  Mr. Fitch informed Ms. Findley he had also received an envelope with documents regarding her criminal background.  Mr. Fitch told her he knew the documents came from Mr. Cochran.

53. Ms. Findley later learned that Roger Olson, another former customer, also received the same envelope. He also told her he knew Mr. Cochran had sent it.

54. Since then, several other acquaintances and colleagues have approached Ms. Findley to let her know they have received similar envelopes, including Mary Joe Clausen (Ms. Findley's previous supervisor at Canoa) and Mary Gonzales, a member at Canoa.

55. On June 11, 2020 the Defendants, through their attorneys, sent a threating "Cease and Desist" demand to Ms. Findley. In that letter they wrongly claimed that Findley had defamed them and had engaged in workplace harassment of Mr. Cochran, pursuant to A.R.S. § 12-1810 (E).

56. Despite no longer working at Canoa, the Defendants' threatening behavior continued, and Canoa also provided Mr. Cochran with additional opportunities to continue that harassment by using their attorneys to threaten Ms. Findley.

57. During Ms. Findley's employment at Canoa, Canoa also ratified Mr. Cochran's behavior and protected him. For example, Maria Lopez, a Canoa employee, witnessed Mr. Cochran placing gifts in Ms. Findley's purse. Ms. Lopez reported that behavior to Canoa's Human Resources Department. In response, Canoa terminated Ms. Lopez for allegedly starting rumors and gossiping.

58. Mr. Gerald Anaya, a Canoa employee, saw Mr. Cochran enter a room where Ms. Findley was working and lock the door. Mr. Anaya was concerned about Ms. Findley's safety and reported what he saw to Ms. Findley. Canoa later terminated Mr. Anaya for allegedly starting rumors and gossiping.

59. On July 7, 2020, Ms. Findley obtained and Injunction against harassment against Mr. Cochran.

## COUNT I
## HOSTILE WORK ENVIRONMENT TITLE VII
## (AGAINST ALL DEFENDANTS)

60. Ms. Findley realleges and incorporates by reference the allegations contained in the previous paragraphs.

61. Mr. Cochran subjected Ms. Findley to unwelcome verbal and physical conduct of a sexual nature including touching. That conduct was severe, pervasive, and altered the conditions of Ms. Findley's employment, creating an abusive work environment.

62. Mr. Cochran, as Ms. Findley's supervisor, engaged in unwelcome conduct of a sexual nature including: (i) inviting Ms. Findley out on dates; (ii) trying to kiss Ms. Findley; (iii) telling Ms. Findley he loved her; (iv) touching Ms. Findley inappropriately; (v) scheduling unnecessary meetings to be with Ms. Findley alone; (vi) calling Ms. Findley on her cell phone on her days off; (vii) placing gifts in Ms. Findley's purse while at work; and (viii) going to Ms. Findley's home uninvited and leaving gifts at her home; and (ix) following Ms. Findley after her shifts.

63. Ms. Findley was damaged by Mr. Cochran's actions.

## COUNT II
## HOSTILE WORK ENVIRONMENT
## PURSUANT TO A.R.S. § 41-1463 ET. SEQ. ARIZONA CIVIL RIGHTS ACT ("ACRA")
## (AGAINST ALL DEFENDANTS)

64. Ms. Findley realleges and incorporates by reference the allegations contained in the previous paragraphs.

65. Mr. Cochran created a hostile work environment by subjecting Ms. Findley to verbal and physical conduct of a sexual nature. That conduct was unwelcome and pervasive enough to alter the conditions of Ms. Findley's employment in violation of A.R.S. § 41-1463(B)(1).

66. Mr. Cochran, as Ms. Findley's supervisor, engaged in unwelcome conduct of a sexual nature including: (i) inviting Ms. Findley out on dates; (ii) trying to kiss Ms. Findley; (iii) telling Ms. Findley he loved her; (iv) touching Ms. Findley inappropriately; (v) scheduling unnecessary meetings to be with Ms. Findley alone; (vi) calling Ms. Findley on her cell phone on her days off; (vii) placing gifts in Ms. Findley's purse while at work; and (viii) going to Ms. Findley's home uninvited and leaving gifts at her home; and (ix) following Ms. Findley after her shifts.

67. Ms. Findley was damaged by Mr. Cochran's conduct.

## COUNT III
## WRONGFUL DISCHARGE-CONSTRUCTIVE DISCHARGE TITLE VII
## (AGAINST ALL DEFENDANTS)

68. Ms. Findley realleges and incorporates by reference the allegations contained in the previous paragraphs.

69. The Defendants constructively discharged Ms. Findley by making her working conditions intolerable, dangerous, and uncomfortable and forcing her into an involuntary resignation on March 13, 2020.

70. Mr. Cochran, as Ms. Findley's supervisor, engaged in a campaign of harassment including threats, inappropriate touching, aggression that made it intolerable for Ms. Findley to remain at her position and forcing her to leave her employment at Canoa.

71. Canoa had discharged the last employee that had complained about Mr. Cochran's sexual misconduct and two (2) others that reported his conduct.

72. The situation at Canoa was dangerous and unsafe for Ms. Findley, since Mr. Cochran was aggressive, made it clear he was armed, and was unhappy regarding Ms. Findley's refusal of his unwelcomed advances.

73. Ms. Findley was damaged as a result of Mr. Cochran's unlawful discrimination which resulted in her constructive discharge, and she has been unable to find similar paying employment.

## COUNT IV
## INVASION OF PRIVACY-FALSE LIGHT
## (AGAINST ALL DEFENDANTS)

74. Ms. Findley incorporates and realleges each and every previous allegation as though fully set forth herein.

75. Mr. Cochran, during his employment at Canoa, took advantage of his position to obtain negative information regarding Ms. Findley's past criminal history.

76. Mr. Cochran, during his employment with Canoa, knowingly published information about Ms. Findley, including her prior criminal history (with those events occurring between 15 and 26 years prior to that publication), her mug shot, and rap sheet, to place her in a false light.

77. Upon information and belief, Mr. Cochran, during his employment at Canoa, used his position to obtain contact information regarding Ms. Findley's co-workers, previous

supervisors, and customers, and mailed them information about Ms. Findley's past to place her in a bad light.

78. Mr. Cochran, during his employment with Canoa, published Ms. Findley's criminal information to others in the community including Ms. Findley's previous supervisor at Canoa, her new employer, and her previous clients at Canoa, to create a false innuendo regarding Ms. Findley that she was a criminal, which is a highly offensive presentation of Ms. Findley's past.

79. Mr. Cochran's publishing of that information placed Ms. Findley in a false light which would be highly offensive to a reasonable person in her position.

80. Mr. Cochran acted in reckless disregard as to the falsity of the publicized matter and the false light in which Ms. Findley would be placed with the publishing of that information.

81. Mr. Cochran's actions were intentional, reckless, and willful and wanton, to serve his own interests, consciously pursuing a course of conduct having reason to know and consciously disregarding a substantial risk that such conduct might significantly injure the rights of others.

82. As a direct and proximate result of the Defendant's actions, Ms. Findley suffered damages.

## COUNT V
## INVASION OF PRIVACY-INTRUSION UPON SECLUSION
## (AGAINST ALL DEFENDANTS)

83. Ms. Findley incorporates and realleges each and every previous allegation as though fully set forth herein.

84. Mr. Cochran, during his employment with Canoa as Ms. Findley's supervisor, intentionally intruded into Ms. Findley's private affairs by: (i) following her home; (ii) visiting her home and making sure she knew he had been at her front door and he knew she was alone; (iii) placing gifts and notes into her purse at work, and at her home; (iv) calling her during her days off; (v) publishing information about her prior criminal history to others.

85. Mr. Cochran's actions against Ms. Findley would be highly offensive to someone in her position.

86. Mr. Cochran's actions were intentional, reckless, and willful and wanton, to serve their own interests, consciously pursuing a course of conduct having reason to know and consciously disregarding a substantial risk that such conduct might significantly injure the rights of others.

87. As a direct and proximate result of the Mr. Cochran's actions, Ms. Findley suffered damages.

### COUNT VI
### INVASION OF PRIVACY-PUBLIC DISCLOSURE OF PRIVATE FACTS
### (AGAINST ALL DEFENDANTS)

88. Ms. Findley incorporates and realleges each and every previous allegation as though fully set forth herein.

89. Mr. Cochran, during his employment at Canoa, gave publicity to private matters concerning Ms. Findley's private life and criminal history, and published it to others including Ms. Findley's new employer, her previous supervisor, and her previous customers at Canoa.

90. Mr. Cochran's publication of statements concerning Ms. Findley's personal life would be highly offensive to a reasonable person and those facts, including her criminal history decades prior to the publication, are not the legitimate concern of the public.

91. Mr. Cochran's actions were intentional, reckless, and willful and wanton, to serve his own interests, consciously pursuing a course of conduct having reason to know and consciously disregarding a substantial risk that such conduct might significantly injure the rights of others.

92. As a direct and proximate result of Ms. Cochran's actions, Ms. Findley suffered damages.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

93. Ms. Findley incorporates and realleges each and every previous allegation as though fully set forth herein.

94. Mr. Cochran acted in an extreme and outrageous manner towards Ms. Findley. He threatened her at home, making sure she knew he had been there, and that she understood he was aware she was alone. Mr. Cochran showed her a gun and acted aggressively towards her when she continued to refuse his sexual advances.

95. Canoa also acted in an extreme and outrageous manner towards Ms. Findley, when it ratified Mr. Cochran's harassment and sent Ms. Findley, a blue-collar employee with limited financial means, a threatening "Cease and Desist Letter." That letter was filled with false claims and alleged potential claims that Canoa would bring against Ms. Findley. Those actions caused Ms. Findley's anxiety and fear for her safety to increase.

96. Canoa's action were also extreme and outrageous when it repeatedly ignored sexual harassment claims against Mr. Cochran. and fired employees that reported or witnessed Mr. Cochran's behavior towards Ms. Findley and were understandably concerned.

97. Upon information and belief, the Defendants intended to cause Ms. Findley severe emotional distress or recklessly disregarded the near certainty that such distress would occur because of their actions.

98. The Defendants actions were intentional, reckless, and willful and wanton, to serve their own interests, consciously pursuing a course of conduct having reason to know and consciously disregarding a substantial risk that such conduct might significantly injure the rights of others.

99. As a direct and proximate result of the Defendants' actions, Ms. Findley sustained severe emotional distress and loss of income.

**WHEREFORE**, Ms. Findley requests the following:

  i. That the Court issue an order that the Defendants' actions described herein were discriminatory and violated the ACRA and Title VII.

  ii. Enjoin Defendants from engaging in any discriminatory practices against employees for bringing a claim for sexual harassment.

  iii. Order Canoa to reinstate Ms. Findley to her former position with all benefits to which she is entitled; and

iv. That the Court enter a judgment in her favor in an amount to be determined at trial encompassing back pay, front pay, attorney's fees, costs, punitive damages, and such other amounts including compensatory damages, as deemed appropriate.

v. Monetary damages sufficient to fully and fairly compensate her for her losses, injuries and damages.

vi. For costs incurred herein.

vii. Demands a jury trial to try the case, and further requests such other relief as this court deems just and proper.

DATED this 9th March, 2021.

**GOLDSMITH & MENDOZA, PLLC**

By:/s/Maria del Pilar Mendoza
Eugene N. Goldsmith
Maria del Pilar Mendoza
*Attorneys for Plaintiff*

## VERIFICATION

STATE OF ARIZONA      )
                      ) ss.
COUNTY OF  Pima       )

KIMBERLY FINDLEY, being first duly sworn, upon her oath, deposes and says:

1. That I am the Plaintiff, in the above-entitled cause; and

2. That I have read the foregoing Complaint and that I am familiar with the contents thereof; and that the Complaint and contents thereof are true and accurate to the best of my knowledge, information, and belief.

DATED this 4 day of March, 2021.

*Kimberly Findley*
KIMBERLY FINDLEY

SUBSCRIBED AND SWORN TO before me this 4th day of March, 2021 by Kimberly Findley.

*Christina Ann Roth*
Notary Public

My Commission Expires:

August 31, 2024

CHRISTINA ANN ROTH
Notary Public - State of Arizona
PIMA COUNTY
Commission # 587210
Expires August 31, 2024